[Cite as *Stanley Miller Constr. Co. v. State*, 2012-Ohio-3994.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STANLEY MILLER CONSTRUCTION CO.

    Plaintiff

    v.

STATE OF OHIO

    Defendant

    and

CANTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al.

    Defendants/Third-Party
    Plaintiffs

    v.

OHIO SCHOOL FACILITIES COMMISSION

    Defendant/Third-Party Defendant

Case No. 2006-05632-PR

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff, Stanley Miller Construction Company (Stanley Miller), brought this action against defendants, Ohio School Facilities Commission (OSFC) and Canton City School District Board of Education (Canton), alleging breach of contract, negligence, and unjust enrichment. The case was tried to the court on the issues of liability and damages.

{¶ 2} On March 1, 2010, this court entered judgment in favor of Stanley Miller in the total amount of $404,276.93 (Stanley Miller I). The court concluded that Stanley Miller was entitled to an equitable adjustment to the contract as follows: $273,925.85 for masonry; $8,658.35 for site work; $80,930.10 for roof trusses; $4,018.79 for sewer work; and $36,074.04 for interest earned. Accordingly, judgment was rendered jointly against Canton and OSFC on the complaint, and in favor of Canton as to the third-party complaint. OSFC appealed the decision of this court and Stanley Miller filed a cross-appeal. On December 28, 2010, the court of appeals reversed the decision of this court and remanded the case for further proceedings. *Stanley Miller Constr. Co. v. Ohio Sch. Facilities Comm.*, 10th Dist. Nos. 10AP-298, 10AP-299, 10AP-432, 10AP-433, 2010-Ohio-6397. (Stanley Miller II.)

{¶ 3} On October 19, 2011, the parties were ordered to submit briefs upon remand and on January 6, 2012, all such briefs were submitted.[1] The case is now before the court for a decision.[2]

{¶ 4} Stanley Miller entered into a contract with OSFC and Canton in January 2003, for the construction of what was to be the Lehman Middle School (Lehman project). During the construction phase, ownership of the proposed middle school was to be shared by OSFC (77 percent) and Canton (23 percent).[3] Stanley Miller was a prime contractor on the project having been awarded a contract for numerous divisions of the work, including the division for masonry, which was the largest single component of the project. Jeffrey Tuckerman, OSFC's project administrator, selected Ruhlin Construction (Ruhlin) as construction manager for the Lehman project. According to

---

[1]For good cause shown, Stanley Miller's December 29, 2011 motion for an extension of time is GRANTED instanter and OSFC's December 19, 2011 motion to strike is DENIED.

[2]On June 29, 2006, Stanley Miller filed an original action in this court against OSFC arising from the same transaction. See *Stanley Miller Constr. Co. v. OSFC*, Ct. of Cl. No. 2006-04351. Although the two cases were combined for trial, the court will issue a separate decision for each case.

[3]OSFC and Canton will be referred to collectively as "OSFC" throughout this decision.

Tuckerman, Ruhlin was an extension of OSFC with respect to the management of the Lehman project.

{¶ 5} Stanley Miller alleges that their work on the Lehman project was plagued by a myriad of costly inefficiencies that were caused by factors outside of its control. For example, Stanley Miller alleges that the combined effect of a hopelessly flawed construction schedule and the persistent meddling of Ruhlin resulted in delays and extra work.

{¶ 6} On July 2, 2004, the scheduled project completion date, Stanley Miller submitted a one-page document to OSFC wherein Stanley Miller demanded that OSFC make an equitable adjustment to the contract price of more than $1.1 million in order to compensate Stanley Miller for unanticipated additional costs it had incurred on the project. The document was authored by Stanley Miller Vice President and Co-owner, Steve Miller, and became known at trial as the "one-page, $1.1 million claim." (Plaintiff's Exhibit 64.) The document reads as follows:

|  | Est. | Actual | Difference |
|---|---|---|---|
| Masonry costs including labor, material and equipment | 2,274,738.00 | 2,751,130.77 | (476,392.77) |
| Cold Weather Protect | 0.00 | 35,973.27 | (35,973.27) |
| Backfill Retaining Walls | 17,400.00 | 51,707.84 | (34,307.84) |
| Concrete Costs | 404,200.00 | 507,029.96 | (102,829.96) |
| Clean Up Costs | 23,000.00 | 56,583.29 | (33,583.29) |
| Temp. Roads, Repair Sub-grade | 8,500.00 | 25,973.04 | (17,473.04) |
| Sewer Work | 53,700.00 | 71,364.53 | (17,664.53) |
| Roof Trusses | 221,600.00 | 291,974.39 | (70,374.39) |
|  |  | Total Losses | (788,598.79) |

|  |  |
|---|---|
| Total OH & Profit | (<u>350,000.00</u>) |
|  | (1,138,598.79) |

|  |  |
|---|---|
| Current Contract | 5,923,846.19 |
| Costs as of this date (7/1/04) | (<u>6,660,747.80</u>) |
|  | (736,901.61) |
| Estimated costs to complete, (Concrete bills yet to arrive and labor to install curb and sidewalk along Broad St.) | (<u>51,697.18</u>) |
|  | (788,598.79) |

{¶ 7} Although there were some subsequent communications between the parties regarding the claim and a brief meeting which occurred in July 2004, it is clear that no payment was made.  Plaintiff now seeks to recover these additional costs under theories of breach of contract, negligence, and unjust enrichment.  The third-party complaint states a claim for contractual indemnity.

## I. MASONRY CLAIM

{¶ 8} In Stanley Miller I, the court awarded Stanley Miller the sum of $273,925.85 on its claim for damages arising out of bid package 4A pertaining to masonry.[4]  For this

---

[4]Stanley Miller was awarded a contract for multiple divisions of the work on the Lehman project, including the following:

"1.    **Bid Package 2B - Site Work** is generally all labor, equipment, material and supervision as required to complete:  site development, removal of existing concrete and asphalt, earthwork, asphalt paving, concrete walks and curbs, sewer collection systems, bicycle parking racks, landscape work, and site concrete.

"2.    **Bid Package 3B - Interior Concrete Slabs** is generally all labor, equipment, material and supervision as required to complete:  slab on grade and slab of deck.

"3.    **Bid Package 4A - Masonry** is generally all labor, equipment, material and supervision as required to complete:  exterior and interior masonry, including site work masonry, insulation, caulking and related work as shown on the Contract Documents.

"4.    **Bid Package 5B - Miscellaneous Metals** is generally all work required to provide materials and complete installation of materials such as ladders, stairs, handrails, etc., which includes offloading, shakeout, raising, bolting, cutting, welding, alignment, shop priming, galvanizing and touch-up.

division of the work, Stanley Miller was to provide "all labor, equipment, material and supervision as required to complete exterior and interior masonry, including site work masonry, insulation, caulking and related work as shown on the Contract Documents." This court determined that OSFC breached the contract by failing to provide Stanley Miller with a workable construction schedule and by wrongfully interfering with Stanley Miller's means and methods.

{¶ 9} In reversing the decision of this court, the court of appeals, in Stanley Miller II, stated: "[I]t is clear that the trial court in the instant matter considered the issue of whether Stanley Miller waived its right to an equitable adjustment under Article 8. Although the record contains evidence relating to the position that OSFC may have waived strict compliance with Article 8, it is clear that the trial court did not base its decision on this evidence. Instead, the trial court based its decision upon evidence showing that OSFC had notice of Stanley Miller's concerns and failed to remedy them. Rather than supporting a finding on the issue, these failures actually undermine the idea that OSFC waived the Article 8 procedures. *See State ex rel. Athens Cty. Bd. of Commrs. v. Bd. of Dirs.*, 75 Ohio St.3d 611, 616, 1996-Ohio-68 ("Waiver is a voluntary relinquishment of a known right."). Indeed, failing to remedy issues not properly raised through the Article 8 procedure would have no bearing on OSFC's voluntary relinquishment of known rights under Article 8 procedure. Again, something more than actual notice is required. This is particularly true in light of the fact that the parties had complied with the Article 8 procedure at various points through the Lehman project.

The Prime Contractor responsible for this work shall be termed the Miscellaneous Steel Installation Contractor (MSIC).

"5. **Bid Package 9A - General Trades Package** is generally all labor, equipment, material and supervision as required to complete: Rough and finish carpentry, insulation, EIFS, shingled and metal roof, all interior and exterior doors, frames, and hardware, rolling security gates, glass and glazing, studs and drywall, all flooring, finish carpentry, caulking, gypsum board walls, acoustical ceilings, paint, division 10 specialties, stage equipment, projection screens, athletic equipment, and gym bleachers." (Plaintiff's Exhibit 2.)

The trial court noted that "the parties followed the contractual claims procedure on numerous occasions" resulting "in change orders and adjustments to the contract price totaling approximately $100,000." (Trial court's decision, at 20.) On the other side, however, Stanley Miller cites change orders, which demonstrate that equitable adjustments were made to the contract without complying with the specific Article 8 procedure. Under the guidance of *Dugan & Meyers*, these are the competing positions on the issue of waiver." Stanley Miller II, ¶18.

{¶ 10} Stanley Miller argues on remand that it did, in fact, comply with Article 8 notice provisions with regard to its masonry claim. Article 8 details the procedure for requesting additional payment. The relevant provision of the parties' agreement reads as follows:

{¶ 11} "8.1.1 Any request for equitable adjustments of Contract shall be made in writing to the Architect, through the Construction Manager, and filed prior to Contract Completion, provided the Contractor notified the Architect, through the Construction Manager, no more than ten (10) days after the initial occurrence of the facts which are the basis of the claim. To the fullest extent permitted by law, failure of the Contractor to timely provide such notice and a contemporaneous statement of damages shall constitute a waiver by the Contractor of any claim for additional compensation or for mitigation of Liquidated Damages."

{¶ 12} Although Article 8.1.1 clearly requires that a written claim be filed prior to contract completion, there is no writing requirement for the 10-day notice.[5] Consequently, the court must examine both the written and oral communications between Stanley Miller and Ruhlin in order to determine whether Stanley Miller complied with the notice provision of Article 8.1.1.

---

[5]This case is distinguishable from *Tritonservices, Inc. v. Univ. of Cincinnati,* Ct. of Cl. No. 2009-02324, 2011-Ohio-7010, in that Article 8 of the contract in *Tritonservices* required the contractor to provide a 10-day notice in writing.

{¶ **13**} Stanley Miller contends that it complied with Article 8.1.1 by notifying Ruhlin, within 10 days of the initial occurrence, of the facts which are the basis of the masonry claim. Stanley Miller maintains that the record is replete with evidence of notice in the form of progress meeting notes, letters, e-mail correspondence, and trial testimony regarding job site conversations. Indeed, this court has previously found that, with respect to both the problems with the schedule and the interference of Ruhlin, OSFC had actual notice of the facts which are the basis of the claim for damages. Moreover, given the frequency and timing of the oral and written communications in the record, the court finds that such notice was timely given within 10 days of the initial occurrence.

{¶ **14**} In fact, with respect to the masonry division, the evidence also reveals that Stanley Miller submitted a written request for an extension of time pursuant to Article 6 of the contract. Article 6 provides as follows:

{¶ **15**} "6.4                          REQUEST FOR EXTENSION

{¶ **16**} "6.4.1                         *Any request by the Contractor for an extension of time shall be made in writing to the Construction Manager no more than ten (10) days after the initial occurrence of any condition which, in the Contractor's opinion, entitles the Contractor to an extension of time. Failure to timely provide such notice to the Construction Manager shall constitute a waiver by the Contractor of any claim for extension, damages or mitigation of Liquidated Damages, to the fullest extent permitted by law.*

{¶ **17**} "6.4.2                         The Contractor's request shall provide the following information so that a timely response may be made to minimize any resulting damages, injury or expense.

{¶ 18} "6.4.2.1                    Nature of the interference, disruption, hindrance or delay;

{¶ 19} "6.4.2.2                    Identification of persons, entities and events responsible for the interference, disruption, hindrance or delay;

{¶ 20} "6.4.2.3                    Date (or anticipated date) of commencement of the interference, disruption, hindrance or delay;

{¶ 21} "6.4.2.4                    Activities on the Construction Schedule which may be affected by the interference, disruption, hindrance or delay, or new activities created by the interference, disruption, hindrance or delay and the relationship with existing activities;

{¶ 22} "6.4.2.5                    Anticipated duration of the interference, disruption, hindrance or delay;

{¶ 23} "6.4.2.6                    Specific number of days of extension requested; and

{¶ 24} "6.4.2.7                    Recommended action to avoid or minimize any future interference, disruption, hindrance or delay." (Emphasis added.)

{¶ 25} Unlike the 10-day notice required by Article 8.1.1, a request for an extension of time pursuant to Article 6 must be submitted in writing.  In this case, the evidence of a written request regarding Stanley Miller's masonry claim appears in the form of correspondence addressed to Joel Reott, Ruhlin's project manager, from both Steve Miller and Keith Hoffman, Stanley Miller's project manager.  These correspondence evidence Stanley Miller's efforts, at the earliest stages of the project, to inform Ruhlin of Stanley Miller's problems with the baseline schedule.  Steve Miller informed Ruhlin in February 2003, that there was insufficient time built into the schedule for Stanley Miller to complete critical activities.  In a correspondence dated February 12, 2003, regarding "proposed adjustments to the schedule," Steve Miller identifies, by item number, each activity for which a time extension is requested, along with the scheduled

duration for each activity and the "revised duration" requested by Stanley Miller. (Plaintiff's Exhibit 15.) Stanley Miller requested, in total, that 174 days be added to its scheduled activities.

{¶ 26} Reott responded to this request by updating the schedule to incorporate some of the revised dates requested by Stanley Miller. However, when Steve Miller reviewed the new schedule he realized that, with a few exceptions, Stanley Miller's suggested revisions were not incorporated into the new schedule. On February 25, 2003, Steve Miller sent a follow-up correspondence to Reott wherein he explained Stanley Miller's position as follows: "I cannot sign your schedule in its present form. With regard to the masonry, I asked for an additional 174 days. In return you gave me 44, of those 44 days most have little affect (sic) on the critical path. On three (3) items which do affect the critical path, you decreased my time by 40 days. On other critical path items you gave me a total of 24 days. The bottom line is that I need more days especially on bearing CMU walls & brick veneer." (Plaintiff's Exhibit 16.)

{¶ 27} The court's review of Steve Miller's correspondence to Reott reveals that Stanley Miller complied with Article 6.4 in requesting an extension of time. Additionally, Steve Miller's follow-up correspondence represents notice to Ruhlin and OSFC of Stanley Miller's potential Article 8 claim for compensation in an amount equal to the extra costs associated with as many as 134 days of masonry work.

{¶ 28} However, even though Ruhlin had actual notice of such facts, there is no evidence that Stanley Miller provided Ruhlin with a contemporaneous statement of damages either orally or in writing. In fact, the evidence establishes that Stanley Miller did not provide any statement of damages until it filed its one-page, $1.1 million claim just prior to the project completion date. Thus, compliance with Article 8.1 has not been demonstrated by the evidence.

{¶ 29} Nevertheless, following the Steve Miller correspondence, Stanley Miller continued to voice concerns about the poor schedule and the effects such a schedule

was having and would continue to have on the efficient progress of masonry work. In July 2003, Hoffman wrote to Reott that the schedule was "illogical at best." In his letter, Hoffman complained that the schedule erroneously required interior masonry walls to be completed before the structure was fully enclosed. He also stated that the schedule "is only seventy-five 75% complete and cannot be used effectively." (Plaintiff's Exhibit 20.) Hoffman advised Reott that proceeding with the work pursuant to the schedule was not efficient. Finally, Hoffman offered to meet with Reott to revise the schedule and asked Reott for an electronic copy of the schedule to facilitate that end.

{¶ 30} None of these subsequent correspondence were as specific as those sent by Steve Miller in February 2003. Moreover, as noted above, Stanley Miller did not provide any statement of damages, either orally or in writing, until just prior to the project completion date. Thus, the court concludes that Stanley Miller failed to comply with the 10-day notice provisions of Article 8.1.1 with respect to the masonry division.

{¶ 31} The same can be said of the negative impact that Ruhlin's project superintendent, Brad Way, may have had on the masonry division. Although Reott testified that he did not specifically recall any Stanley Miller complaints about Way, and that he "vaguely remembers" Stanley Miller's request that Way be removed from the project, the evidence proves that Stanley Miller frequently expressed serious concerns about Way. For example, in a September 4, 2003 letter to Reott, Hoffman requested that "any communication between Ruhlin and Stanley Miller be directed either through this office or our job-site superintendent, Donnie Kramer. Please do not give direction to any other field personnel." (Plaintiff's Exhibit 23.) The evidence establishes that this letter was in reference to Way's interference. The very next day, Hoffman wrote Reott complaining that "there is no money in our bid to pay field personnel to discuss the job with [Way]. This disruption in work-flow adds up over the length of the job and is not recoverable." (Plaintiff's Exhibit 24.) David Krutz, Ruhlin's project executive, testified that he had oversight responsibility for all Ruhlin/OSFC projects, of which there were

many.  Although he visited the Lehman project job site on only a half-dozen occasions, he testified that in early 2004 he was aware that Stanley Miller was having trouble with Way.

{¶ 32} When Stanley Miller's complaints were not addressed, Hoffman requested that Way be removed from the project.  In his March 11, 2004 letter to Reott, Hoffman recommended Way's removal to "avoid or minimize any future interference, disruption, hinderance or delay."  (Plaintiff's Exhibit 43.)  The trial testimony given by both Ruhlin and OSFC personnel involved in the project convinces the court that Stanley Miller's request for Way's removal was not seriously considered by OSFC.  However, as was noted by the court of appeals in Stanley Miller II, OSFC's failure to address Stanley Miller's concerns about the interference of Way, actually supports a finding that OSFC intended to hold Stanley Miller to the contractual notice requirements of Article 8.1.1;[6] that such requirements were not waived.

{¶ 33} Based upon the foregoing, the court finds that even though OSFC had actual notice that Way was having a negative impact on Stanley Miller's work in the masonry division, none of the correspondence between Stanley Miller and Ruhlin contain a contemporaneous statement of damages as required by Article 8.1.1 and there is no persuasive evidence that such a statement was provided orally.

{¶ 34} In conclusion, even though Stanley Miller provided Ruhlin with timely notice of facts which support as many as 134 days of uncompensated masonry work directly attributable to the faulty schedule, and which form the basis of a claim for

---

[6]The record establishes that the issue came to a head during the painting activities of Stanley Miller's subcontractor in the school gymnasium.  In a March 15, 2004 correspondence, Hoffman criticizes Way's conduct as follows:  "Item 5:  Brad Way is on site to ensure that products are installed per the specifications, I agree.  He is also there to see that the project proceeds in accordance with the schedule and specifications.  The specifications are clear, in that, during a dispute, the work is to be performed so as not to delay the construction schedule.  This project was held hostage for 45 days due to a disagreement about the value of a credit and because the manufacturer's recommendations were ignored."  (Plaintiff's Exhibit 46.)

unspecified delays caused by Brad Way's interference with Stanley Miller's means and methods, Stanley Miller never  provided a contemporaneous statement of damages. Thus, the court finds that Stanley Miller failed to provide notice of its claim as required by Article 8.1.1 of the contract.  Further, pursuant to Article 8.1.1, the failure of notice results in a waiver by Stanley Miller of its right to an equitable adjustment of the contract to compensate it for the additional costs in the masonry division.

{¶ 35} Stanley Miller argues, in the alternative, that OSFC, by and through Ruhlin, waived strict compliance with the notice requirements of Article 8.1.1 by its words and conduct.  "'[W]aiver of a contract provision may be express or implied.' * * * '"[W]aiver by estoppel" exists *when the acts and conduct of a party are inconsistent with an intent to claim a right,* and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.' * * * 'Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights.' * * * Whether a party's inconsistent conduct constitutes waiver involves a factual determination, * * * and such a factual determination is properly made by the trier of fact." *Lewis & Michael Moving and Storage, Inc. v. Stofcheck Ambulance Serv., Inc.,* 10th Dist. No. 05AP-662, 2006-Ohio-3810, ¶29-30, quoting *Natl. City Bank v. Rini*, 162 Ohio App.3d 746, 2005-Ohio-4041, ¶24 (11th Dist.)  *See also Tritonservices, supra,* at ¶27.

The evidence of the parties' course of performance suggests that Article 8.1.1 compliance was expected by OSFC but that such compliance could be waived with respect to certain claims.

{¶ 36} For example, in a December 15, 2003 letter to Hoffman, Reott stated:

{¶ 37} "I received your Article 8 - Request for Equitable Adjustment of the Contract in the amount of $8,142.52 today for the stairwell landings.  Article 8 - Dispute Resolution Procedure Item 8.1.1 states the following - Any request for equitable adjustment of Contract shall be made in writing to the Architect, through the

Construction Manager, and filed prior to Contract Completion, provided the Contractor notified the Architect, through the Construction Manager, <u>no more than 10 days after the initial occurrence of the facts</u> which are the basis of the claim.

{¶ 38} "Stanley Miller is out of their claim right for this issue, however in the spirit of partnering I will submit this request to the Commission."  (Defendants' Exhibit AA.)

{¶ 39} It is clear from Reott's letter that although OSFC's construction manager expected Stanley Miller to comply with the notice provisions of Article 8.1.1, exceptions could be made, on a claim by claim basis.

{¶ 40} There is also evidence that where Ruhlin agreed to pay Stanley Miller for work performed in excess of that which was required by the contract, some form of correspondence would be issued to document the agreement.  For example, a July 23, 2004 e-mail string evidences an agreement to pay Stanley Miller for approximately $2,100 of additional painting.  (Plaintiff's Exhibit 34.)  Similarly, a May 27, 2004 correspondence from Reott to Hoffman memorializes a negotiated agreement regarding payment for defective curbs. (Defendants' Exhibit I.)

{¶ 41} Similarly, Article 7.3.1 expressly permits OSFC to issue a Field Work Order (FWO) in lieu of a formal change order for additional work costing no more than $10,000. Correspondence in March and April 2005 also evidence the fact that the parties utilized both the change order process of Article 7 and the Article 8 dispute resolution process throughout the course of the project.  Moreover, as noted above, Stanley Miller complied with the Article 6 process for requesting extensions of time on more than one occasion as evidence by Hoffman's March 11, 2004 letter to Reott.

{¶ 42} As noted by this court in Stanley Miller I, the contractual claims procedure resulted  in change orders and adjustments to the contract price totaling approximately $100,000. The correspondence admitted into evidence as Plaintiff's Exhibits 72-74, show that Stanley Miller submitted Change Order requests for a number of items of work that had previously been completed; that subsequent meetings attended by

representatives of Stanley Miller, Ruhlin, OSFC, and the project Architect resulted in the resolution of many of these requests; and that further dispute resolution meetings were discussed regarding the remaining disputed items.

{¶ 43} The evidence clearly demonstrates that time was of the essence on this project and that, on many occasions, the parties agreed that Stanley Miller would perform certain work and that either a change order or agreed adjustment to the contract price would be negotiated at a later date.  The parties referred to the later practice as "partnering."  However, neither the existence of the FWO procedure under Article 7.3.1 nor the concept of partnering support a finding that OSFC waived the Article 8.1.1 notice requirements either for masonry claims or on a project wide basis as Stanley Miller now contends.

{¶ 44} Moreover, even if the court believed that such notice provisions were waived in respect to the masonry division, the court must still determine whether Stanley Miller complied with the remaining requirements of Article 8.1 with respect to any portion of the masonry claim for which proper notice had been waived.

{¶ 45} Article 8.1 further provides:

{¶ 46} "8.1.2                         In every such written claim filed in accordance with paragraph GC 8.1.1, the Contractor shall provide the following information to permit evaluation of the request for equitable adjustment of the Contract.

{¶ 47} "8.1.2.1                      Nature and amount of the claim, which the contractor shall certify before a notary public is a fair and accurate assessment of the damages suffered by the contractor;

{¶ 48} "8.1.2.2                      Identification of persons, entities and events responsible for the claim;

{¶ 49} "8.1.2.3                      Activities on the Construction Schedule affected by the claim or new activities created by any delay, interference, hindrance or disruption and the relationship with existing activities;

**{¶ 50}** "8.1.2.4                    Anticipated duration of any delay, interference, hindrance or disruption;

**{¶ 51}** "8.1.2.5                    Recommended action to avoid or minimize any future delay, interference hindrance or disruption."

**{¶ 52}** There is no doubt that the one-page, $1.1 million claim submitted by Stanley Miller completely and utterly fails to comply with the above-cited requirements of Article 8.  With respect to the masonry portion of the claim, Stanley Miller simply subtracted its total estimated costs of the masonry division from total actual masonry costs in order to arrive at $476,392.77.  The one-page document is not notarized; it does not identify the persons, entities and events responsible for the claim; it does not set forth the activities on the Construction Schedule affected by the claim or new activities created by any delay, interference, hindrance or disruption and the relationship with existing activities; and it does not identify the anticipated duration of any delay, interference, hindrance or disruption.  The claim does not even state when the delay, interference, hindrance or disruption occurred.

**{¶ 53}** Stanley Miller acknowledges the bare bones nature of the one-page claim document, but it argues that OSFC waived its right to strict compliance with the requirements of Article 8.1.2 through a course of performance.  The court disagrees.

**{¶ 54}** Article 8.2.1 states: "To avoid or minimize the filing of requests for equitable adjustment of the Contract, the Contractor and the Construction Manager, with the assistance of the Architect, shall endeavor to timely and proactively identify, address and resolve matters involving persons, entities or events which may give rise to a request for equitable adjustments of the Contract."

**{¶ 55}** There is no question that Stanley Miller's toxic relationship with Ruhlin hindered the process contemplated in Article 8.2.1.  Indeed, based upon the evidence, the court finds that Stanley Miller believed that any further resort to the process with regard to the scheduling issues and the interference of Way would have been futile.

However, as noted by the court of appeals in Stanley Miller II, this belief, even if it was well founded, does not excuse Stanley Miller's patent failure to properly document its masonry claim.

{¶ 56} David Miller, President of Stanley Miller, testified that he told his field staff that if performing the masonry work in the manner desired by Way resulted in extra costs, that Stanley Miller would simply charge OSFC at the end of the job; that he "just wanted to get the job done." Although Miller's desire to get the job done is laudable, his expectation that OSFC would simply pay for the extra costs without any documentation to support either OSFC's contractual liability for such costs or the amount thereof was misplaced. As difficult as it may have been to completely and accurately track extra masonry costs associated with either the schedule deficiencies or Way's interference, Stanley Miller was contractually obligated to make the effort. The evidence suggests that Stanley Miller's method of tracking costs by phase could have been used by Stanley Miller to track masonry costs attributable to both the poor schedule and the interference of Way, but that no such effort was made.

{¶ 57} The evidence also shows that OSFC made an effort to address Stanley Miller's one-page, $1.1 million claim in the context of Article 8, even though the document was patently deficient on its face.

{¶ 58} "8.2.2 The Construction Manager, with the assistance of the Architect, shall within 30 days of receipt of a request for equitable adjustments of the Contract filed pursuant to paragraph GC 8.1.1, schedule a meeting with the Contractor to implement the job site dispute resolution procedures the parties agreed to implement as a result of the partnering arrangement."

{¶ 59} Stanley Miller sent its one-page claim document to Jeffrey Tuckerman who forwarded the claim to David Krutz. The document was stamped "received" by OSFC on July 2, 2004. According to Krutz, he spoke with Steve Miller shortly thereafter and

asked him to provide some "back-up" documentation to support the claim. Steve Miller reportedly told Krutz he would have something for him in August.

**{¶ 60}** A meeting was held on July 16, 2004, to discuss the $1.1 million claim. In attendance were David and Steve Miller, Tuckerman, Krutz, and a representative from both Canton City Schools and the project architect. According to Tuckerman and Krutz, Steve Miller was asked to provide documentation to back up the claim in accordance with Article 8 of the contract. Tuckerman testified that the meeting lasted approximately 30-45 minutes and ended when both David and Steve Miller "walked out."

**{¶ 61}** At a March 24, 2005 meeting with Hoffman regarding Stanley Miller's outstanding change order requests for other portions of the work, Krutz inquired about back-up documentation for the $1.1 million claim, whereupon Hoffman told him to contact Steve Miller. Krutz's subsequent e-mail to Tuckerman, dated April 25, 2005 states in relevant part: "These three change orders equal the $22,429.44 that was agreed to at the March 24, 2005 meeting. There is still $33, 685.16 in disputed change order requests from Stanley Miller that the commission wants to review and discuss *when additional information is presented on the $1 million claim*." (Emphasis added.) (Plaintiff's Exhibit 74.)

**{¶ 62}** Neither Krutz nor Tuckerman ever received further documentation regarding the $1.1 million claim. Although Tuckerman acknowledged that OSFC failed to formally reject the $1.1 million claim, and that he wishes he had put something in writing, it was his understanding that Steve Miller was planning to follow up with a more detailed document.[7]

**{¶ 63}** While Stanley Miller claims that OSFC was not prejudiced either by the eleventh-hour presentation of the one-page, $1.1 million claim, the lack of detail and the

---

[7]R.C. 153.16(B) provides that a contractor may bring suit against the owner where a claim is not resolved within 120 days.

failure to provide back-up, the obligation to comply with the contractual claims process is not conditioned upon prejudice to the owner.  Moreover, the evidence establishes that poor weather also contributed to the costs of the Lehman project.  In an e-mail string dated April 2004, Hoffman referred to the summer of 2003 as "the rainiest summer in over 100 years."  (Defendants' Exhibit H.)  Additionally, in the meeting with OSFC regarding the one-page, $1.1 million claim, Steve Miller complained to Krutz that costs were elevated by a cold winter and a wet spring.  At trial, Hoffman admitted that a portion of the extra time required to complete the masonry work was due to rainy weather but he estimated that portion to be only ten percent.

**{¶ 64}** Furthermore, the evidence at trial establishes that two partially constructed masonry walls were razed and then reconstructed as a result of Stanley Miller's errors. Carl Weithman, Stanley Miller's masonry foreman, admitted that Stanley Miller erred in the framing of a doorway and that the fix "took about one full day."

**{¶ 65}** Article 8.3.1 states: "The Contractor shall promptly provide any additional information requested by the Construction Manager or the Architect."

**{¶ 66}** Based upon the language of the contract and the facts of this case, Ruhlin and OSFC were obligated to seek additional information from Stanley Miller in support of the claim before considering either denial of the claim, payment of the claim, or the submission of the claim to alternative forms of dispute resolution.  OSFC clearly made such a request but Stanley Miller either failed or refused to provide the required information.

**{¶ 67}** To the extent that Stanley Miller argues that R.C. 4113.62 prohibits OSFC from relying upon Article 8.1 in denying Stanley Miller's claim for an equitable adjustment because the "delay" in the masonry division was caused by Ruhlin, R.C. 4113.62 provides:

**{¶ 68}** "(C) (1) Any provision of a construction contract * * * that is made a part of a construction contract, agreement * * * that waives or precludes *liability for delay* during

the course of a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, or that waives any other remedy for a construction contract when the *cause of the delay* is a proximate result of the owner's act or failure to act, is void and unenforceable as against public policy." (Emphasis added.)

{¶ 69} Based upon the totality of the evidence the court finds that Stanley Miller incurred increased costs due to inefficiencies in the masonry division caused both by Ruhlin's inadequate construction schedule and the interference of Way in Stanley Miller's means and methods. Although Stanley Miller acknowledges that there is a distinction between a claim based upon inefficiency and a claim based upon delay, Stanley Miller argues that R.C. 4113.62 legislatively nullifies the entirety of Article 8 as it applies to Stanley Miller's claim. (See Plaintiff's Brief upon Remand, at p. 9.) The court disagrees.

{¶ 70} The court of appeals in Stanley Miller II did not address R.C. 4113.62. Rather, upon remand, this court was asked to "analyz[e] the issue of waiver, along with the pertinent evidence, in light of our recent decision in *Cleveland Construction*." Stanley Miller II, ¶19. The court of appeals further stated: "We therefore * * * remand this matter to the trial court for it to determine whether OSFC met its burden of proving waiver based upon the evidence in the record." *Id.* at ¶20. Given the explicit instructions of the court in Stanley Miller II, Stanley Miller's argument based upon R.C. 4113.62 is without merit.

{¶ 71} Moreover, even if R.C. 4113.62 nullifies the Article 8.1.1 and renders notice unnecessary in this case, Stanley Miller was still required to follow both Article 8.1.2 regarding the content of the claim and Article 8.3.1 which required Stanley Miller to provide additional information to OSFC upon request. As noted above, Stanley Miller completely and utterly failed to comply with either provision.

{¶ 72} In short, it is clear from the testimony of Stanley Miller field personnel that when Stanley Miller first began experiencing inefficiencies in its masonry operation as a

result of the faulty schedule and Way's interference, Stanley Miller "had no idea that this would snowball into the mess that it did." Although the court finds this evidence to be credible, it does not provide a legal excuse for Stanley Miller's failure to timely provide a contemporaneous statement of damages as required by Article 8.1.1, file the claim in accordance with Article 8.2, and subsequently provide OSFC with additional information regarding the claim as required by Article 8.3.

{¶ 73} As noted above, in February 2003, Stanley Miller documented as many as 134 days of additional masonry work not accounted for in the schedule. Stanley Miller, however, did not file a claim for additional costs in the masonry division until July 2005, when it submitted its one-page, $1.1 million claim. And, it is clear upon the face of the one-page, $1.1 million claim that Stanley Miller simply deducted its bid costs for the masonry division from its total masonry costs in order to arrive at $476,392.77. Although Stanley Miller representatives Steve and Dave Miller subsequently attended an Article 8 meeting at which time Steve Miller was asked to provide additional information in support of the claim, no further information was provided.

{¶ 74} Pursuant to Stanley Miller II, although OSFC, by and through Ruhlin, had actual notice of the facts forming the basis of the masonry claim and the fact that OSFC, by and through Ruhlin, caused or contributed to Stanley Miller's inefficiencies in the masonry division, such facts do not provide a legal excuse for Stanley Miller's complete failure to document its claim in accordance with the contract; particularly where there is no convincing evidence of a waiver of the relevant contract procedures by OSFC.

{¶ 75} In short, even though the court previously concluded, in Stanley Miller I, that OSFC breached the contract by failing to provide a workable construction schedule and by wrongfully interfering with the means and methods of Stanley Miller's masonry work, the evidence establishes that Stanley Miller waived its right to an equitable adjustment to the contract by failing to comply with the contractual claims process. The court shall award nothing to Stanley Miller with respect to the masonry claim.

## II.  CONCRETE COSTS

{¶ 76} Given the court's determination that OSFC did not waive its right to insist on compliance with Article 8.1.1 on a project wide basis, the court must review the evidence to determine whether any part of the process was waived with respect to concrete costs. Similarly, while this court ruled in Stanley Miller I that Stanley Miller's claim for additional labor costs in the concrete division failed due to a lack of necessary proof, upon remand this court must first consider the issue of waiver.

### A.  Concrete Division

{¶ 77} For the concrete division of the work, Stanley Miller was required to furnish "all labor, equipment, material and supervision as required to complete:  slab on grade and slab of deck."  As was the case with masonry, Stanley Miller claims that the faulty schedule combined with the interference by Ruhlin added to the costs of the concrete division.  Stanley Miller's concrete foreman, Norman George, testified that he was unaware of any interference by Way with Stanley Miller's prosecution of the work.  His only complaint was that he believed his crew was required to do more leveling on the Lehman project than was required on other similar projects.  George remembered, however, that during his work on the concrete floors he observed Way storm out of a meeting and exclaim, "nobody calls me an asshole and gets away with it; you guys are gonna pay."  George surmised that Way was referring to Stanley Miller.

{¶ 78} Hoffman testified that on certain unspecified occasions, his crews were prevented by Way from pouring concrete in large quantities at one time; that concrete was poured in a "piecemeal" fashion.  According to Kramer, Way also prohibited Stanley Miller from pouring any concrete at all in certain areas even though Stanley Miller had already "set up" the area.  In Kramer's opinion, Way's interference turned 40 days of concrete work into 60 days, significantly increasing Stanley Miller's labor costs.  Kramer

also attributed extra costs to Ruhlin's decision to restrict contractor ingress and egress to a single set of doors.

{¶ 79} Although logic suggests that the poor schedule combined with the interference by Ruhlin to produce inefficiencies in the prosecution of the concrete work, there is little evidence of Article 8.1 compliance with respect to this portion of Stanley Miller's claim. As noted above, the evidence does not support a waiver of strict compliance with Article 8 on a project wide basis. Accordingly, even if the court could find actual notice of the facts forming the basis of the claim was timely provided to OSFC, there is no evidence that Stanley Miller provided OSFC with a contemporaneous statement of damages as required by Article 8.1.

{¶ 80} Stanley Miller's one-page, $1.1 million claim letter seeks an equitable adjustment for "concrete costs" of $102,829.96. Inasmuch as concrete work was required in several divisions of Stanley Miller's contract, the one-page claim letter completely fails to comply with Article 8.2 and, as noted above, Stanley Miller also failed to provide back-up documentation pursuant to Article 8.3 when requested by OSFC to do so.

{¶ 81} Moreover, as this court found in Stanley Miller I, even if OSFC had waived strict compliance with Article 8, Stanley Miller failed to produce sufficient evidence to support a finding that any of its extra costs in this division were directly attributable either to the faulty schedule or to the improper interference of Ruhlin with Stanley Miller's means and methods.

**B. Site Work Division**

{¶ 82} With respect to concrete costs associated with the site work division, Stanley Miller claims that incomplete plans provided by the architect delayed Stanley Miller's prosecution of the work. Steve Miller testified that the plans did not provide sufficient reference points to enable Stanley Miller to lay out the concrete sidewalks. Miller estimated that his crews were delayed by approximately one month while they

waited for additional information from the architect and that, when work resumed, Stanley Miller was required to put more men on the job in order to complete the work in the allotted time.

{¶ 83} In the court's March 1, 2010 decision, it was determined that Stanley Miller failed to follow the claims process with respect to this delay claim and that Stanley Miller also failed to convince the court, pursuant to *Conti Corp. v. Dept. of Admin. Servs.*, 90 Ohio App.3d 462 (10th Dist. 1993), either that it was unfairly prohibited from filing an acceleration claim or that filing such a claim would have been a vain act. In light of the reversal of *Conti* by the court of appeals in Stanley Miller II, the court turns its attention to the issue of waiver. Specifically, whether the evidence supports a finding that OSFC waived the Article 8 requirements with respect to this portion of Stanley Miller's claim.[8]

{¶ 84} Based upon the evidence in the record, Stanley Miller has not convinced the court that OSFC waived the contractual claims process with respect to the concrete claim. Consequently, even though OSFC had actual notice of the facts which form the basis of this claim, there is no evidence upon which the court can infer that OSFC waived its right to insist that Stanley Miller provide a contemporaneous statement of damages, that Stanley Miller file a claim in compliance with Article 8.2, and that Stanley Miller provide additional relevant information when asked by OSFC.

## C. General Trades Division

{¶ 85} The testimony regarding the concrete costs allegedly incurred by Stanley Miller in the general trades division is scant. As noted above, Stanley Miller was required by the contract to furnish "all labor, equipment, material and supervision as required to complete: rough and finish carpentry, insulation, EIFS, shingled and metal roof, all interior and exterior doors, frames, and hardware, rolling security gates, glass and glazing, studs and drywall, all flooring, finish carpentry, caulking, gypsum board

walls, acoustical ceilings, paint, division 10 specialties, stage equipment, projection screens, athletic equipment, and gym bleachers."  (Article 9A.)

**{¶ 86}** It is not evident to the court from the above quoted description of the work that any meaningful portion of the general trades division involved concrete, and the testimony did not enlighten the court on this point, either with respect to Article 8 notice or the merits of the claim, if any.  Accordingly, waiver is not an issue as Stanley Miller has not satisfied its burden of proof on this issue.

## III.  SITE WORK

**{¶ 87}** With respect to the division pertaining to site work, Stanley Miller agreed to provide "all labor, equipment, material and supervision as required to complete:  site development, removal of existing concrete and asphalt, earthwork, asphalt paving, concrete walks and curbs, sewer collection systems, bicycle parking racks, landscape work, and site concrete."  (Article 2B.)

**{¶ 88}** Stanley Miller claims that when it arrived at the job site to begin the construction of a retaining wall, the conditions were materially different than those that were represented to bidders.  Specifically, Stanley Miller asserts that a substantial amount of fill was either missing from the site or unuseable, and that it was required to purchase additional fill and provide additional labor and equipment in order to restore the site to the proper grade.  According to Stanley Miller, additional costs of $34,307.84 were incurred in this process.

**{¶ 89}** Way testified that sufficient fill material was, in fact, on site but that Stanley Miller was not permitted to use the fill due to its own negligence in allowing the material to become saturated with water.  OSFC also claims that Stanley Miller has waived this claim inasmuch as it agreed to assume such costs as evidenced by a correspondence

---

[8]In Stanley Miller I, this court determined that recovery under a total cost theory is unavailable to

dated March 21, 2003.  (Defendants' Exhibit P.)  Defendants' Exhibit P is a letter drafted by Reott memorializing his understanding as to the resolution of certain site work issues.  Although this correspondence provides some evidence of an agreement, it is not conclusive given the fact that:  1) the correspondence was neither generated nor signed by Stanley Miller; and, 2) the correspondence conflicts with credible testimony from Stanley Miller's employees that the issue of costs was not resolved upon completion of the work.  See Plaintiff's Exhibit 33.

{¶ 90} When Defendants' Exhibit P is considered in conjunction with the trial testimony, the court is convinced that the site conditions were materially different than those represented in the bid documents.  Specifically, the fill material left on site was either insufficient to perform the work or was unuseable due to factors beyond the control of Stanley Miller.  The court is not persuaded by the testimony that Stanley Miller was at fault for the lack of useable fill.

{¶ 91} Moreover, the contract provided at Article 7.5.3:  "The Architect and the Construction Manager will promptly investigate the conditions and if the Architect or the Construction Manager finds that such conditions do materially differ from those upon which the Contract Documents permit the Contractor to rely and differ materially from those ordinarily encountered and generally recognized as inherent in Work of the character provided for in the Contract, causing an increase or decrease in the cost of the Contract, *an appropriate Change Order shall be processed.*"  (Emphasis added.)

{¶ 92} Both Way and Reott recalled that a change order was issued for the work on the  retaining wall in the amount $10,000 or $12,000; neither witness identified the specific change order.  Way believed the change order compensated Stanley Miller for the costs incurred to thaw soil left on site.  Based upon the totality of the evidence, the court finds that Stanley Miller has proven that the cost to purchase the additional backfill

---

Stanley Miller for this element of the one-page, $1.1 million claim.

and the additional labor associated with the fill was a cost to Stanley Miller that was not contemplated by the agreement.  It is simply not reasonable to believe that Stanley Miller agreed to absorb this extra cost without compensation.  Article 7.5.3 requires the processing of an appropriate change order.  The court finds, however, that the parties elected to proceed with the work and resolve the issue informally rather than to resort to the change order procedures.  Consequently, Stanley Miller did not waive its right to seek an equitable adjustment to the contract by failing to strictly comply with the contractual claims process for this portion of its site work claim.

{¶ 93} At trial, Stanley Miller's controller, Kathy Kneisel, testified that according to Stanley Miller's company records, the estimated cost to back-fill the retaining wall was $44,400 and the actual cost was $50,929, resulting in a loss of only $7,529.  The court finds this figure to be the more reliable estimate.  Adding allowable overhead and profit results in a total equitable adjustment of $8,658.35.

## IV.  SITE CLEAN-UP

{¶ 94} The relevant Articles of the contract provide in part:

{¶ 95} "2.10.2                    If the Contractor fails to clean up during the progress of the Work, the provision of paragraph GC 5.3 may be invoked.

{¶ 96} "2.10.3                    If the Contractor fails to maintain the areas adjacent to the Project clean and free of waste materials and rubbish, upon written notification by the Architect or the Construction Manager, the School District Board shall direct the local jurisdiction having responsibility for the area to clean the area.

{¶ 97} "2.10.3.1                 The cost of cleaning the area adjacent to the Project shall be deducted from the responsible Contractor as the Architect or the Construction Manager recommend and the State determines to be appropriate.

{¶ 98} "2.10.3.2                 The decision of the State shall be final."

{¶ 99} Stanley Miller claims that it was constantly pressured by Ruhlin to clean the site even though, in many instances, the debris had been discarded by other contractors. Although the contract contained a provision for Ruhlin to bring in another contractor for the specific purpose of cleaning excess debris from the site, Stanley Miller claims that it alone was required to do such work.

{¶ 100} In his January 13, 2004 correspondence, Hoffman complains that Ruhlin's 72-hour notice regarding cleanup is "totally without merit," however, there is no other convincing evidence of Article 8 compliance with regard to this claim. Even if the oral and written communications provided actual notice to Ruhlin that clean up costs were being incurred by Stanley Miller in excess of what was required by the contract, there is no evidence of a contemporaneous statement of damages.

{¶ 101} Additionally, Stanley Miller took no photographs to support the claim nor did it otherwise document the claim as required by Article 8.2 and 8.3. Although Kramer acknowledged that his crew completed "clean-up slips" whenever such work was done, Stanley Miller made no effort to describe the debris removed or apportion the costs to the responsible party. Based upon the foregoing, the court finds that Stanley Miller waived its right to an equitable adjustment for clean up costs.

## V.  ROOF TRUSSES

{¶ 102} As part of the general trades division, Stanley Miller installed metal roof trusses throughout the project. Hoffman testified that prior to the installation of the trusses, he cautioned Way that the project plans called for trusses to be installed in such a way that they would block access to some of the duct work. According to Hoffman, Way told Stanley Miller to install the trusses as specified in the plans, and the evidence establishes that Stanley Miller did so. When the HVAC contractor subsequently informed Way that access to the duct work was blocked by the trusses,

Way instructed the contractor to cut the trusses.  According to Stanley Miller site foreman, Ron Nichols, Way then demanded that Stanley Miller "fix it."

{¶ 103} In Stanley Miller I, this court found both that Stanley Miller was entitled to an equitable adjustment to the contract for the additional costs to repair the damaged trusses, and that resort to the contractual claims process would have been a waste of time.  In light of Stanley Miller II and given the reversal of *Conti*, *supra,* the court must determine whether Stanley Miller complied with Article 8 with respect to the claim.

{¶ 104} As noted above, the evidence does not support a waiver of the process by OSFC on a contract wide basis.  In this instance, Ruhlin clearly had actual notice of the facts that form the basis of the claim, but there is no evidence of a contemporaneous statement of damages.

{¶ 105} The relevant evidence of an implied waiver by OSFC is Hoffman's testimony that Way told him to send a bill to the HVAC contractor.  Steve Miller testified that the ordinary and usual practice in the construction industry under such circumstances is for the aggrieved contractor to assert its claim against the owner and for the owner to "back-charge" the responsible party.  Reott acknowledged that OSFC uses this practice in resolving intra-contractor delay claims.  In this instance, the responsible party is OSFC, by and through Ruhlin, inasmuch as Way instructed the HVAC contractor to cut the trusses.

{¶ 106} While the evidence may show that the filing of a claim by Stanley Miller would be a vain act, the evidence does not establish a waiver by OSFC of the claims process.[9]  And, even if such evidence could be construed as an implied waiver of Article 8.1 notice, Stanley Miller subsequently failed to properly file the claim in accordance with Article 8.2 or to provide any back up documentation pursuant to Article 8.3.1, when

---

[9]As noted above, the scope of remand in Stanley Miller II does not contemplate the application of R.C. 4113.62 as a means for Stanley Miller to avoid Article 8 waiver.

requested by OSFC to do so.  There is no convincing evidence of a waiver by OSFC of the requirements of Article 8.2 and 8.3 in regard to this claim.

## VI.  COLD WEATHER PROTECTION

{¶ 107} Stanley Miller's claim is based upon its assumption that, but for the scheduling issues attributable to Ruhlin, the Lehman project would have been under roof before the winter of 2003-2004.  OSFC argues that Stanley Miller should not recover the costs of additional cold weather protection inasmuch as its bid estimate for cold weather protection exceeds the total actual costs incurred by Stanley Miller.  Stanley Miller counters that even though it overestimated weather protection, it was still required to pay for extra cold weather protection in the winter of 2003-2004.

{¶ 108} Putting the merits of Stanley Miller's claim aside, the court finds that Stanley Miller waived its claim to additional cold weather costs inasmuch as it did not provide timely notice and a contemporaneous statement of damages.  The one-page, $1.1 million claim was submitted in July 2004, many months after the extra costs were incurred.  Stanley Miller has provided no convincing evidence of a waiver by OSFC of Article 8.

{¶ 109} Moreover, even if there were a waiver, Stanley Miller has not satisfied Article 8.2 or 8.3.  The actual costs of additional cold weather protection could have been calculated by Stanley Miller with relative ease, but Stanley Miller chose not to itemize its claim nor did it provide the back-up documentation requested by OSFC.

{¶ 110} In short, Stanley Miller has not proven that it is entitled to an equitable adjustment to the contract in order to compensate it for additional cold weather protection.

## VII.  TEMPORARY ROADS

{¶ 111} The relevant language in division 2B of the contract states:

{¶ 112} "Bid Package #2B [Stanley Miller] shall provide and maintain the construction entrance off of Broad Ave. This contractor shall maintain the construction entrance and construction road that was installed by the #2A contractor. This contractor is shall (sic) remove these two (2) temporary site entrances when required by CM. Temporary roads for access around the site are the responsibility of each Prime Contractor requiring such. Bid Package #2B shall remove all site access roads (whether installed by 2A or not) prior to completing landscaping and final site improvements."

{¶ 113} Although the contract is not crystal clear, the court finds that Stanley Miller was required to construct and maintain the temporary road at Broad Avenue and that it was required to maintain a temporary road ending at 13th Street.

{¶ 114} The dispute regarding the temporary roads is two-fold. First, Stanley Miller claims that the site conditions in the area where it was to construct the Broad Avenue temporary road differed significantly from those represented in the specifications. Second, Stanley Miller claims that the extensive repairs made to the temporary road ending at 13th Street far exceeded what could be reasonably considered "maintenance."

{¶ 115} Nichols testified that when he arrived at the site to begin construction of Broad Avenue he found that the grade was too high; the previous site contractor had not removed sufficient material for the area to receive limestone and asphalt. According to Nichols, Kramer was concerned about the tight time-frame and that Kramer simply told him to perform the necessary additional work and that he (Kramer) would work out the payment details later.

{¶ 116} The evidence does not show that Stanley Miller made an attempt to comply with the contractual claims process in regard to Broad Avenue. Accordingly, even if Ruhlin had actual notice of the facts that form the basis of this portion of Stanley

Miller's claim, no contemporaneous statement of damages was submitted either orally or in writing.

{¶ 117} With respect to the repair of the sub-grade at 13th Street, Stanley Miller's project superintendent, Greg Davis, testified that the temporary road was damaged either by excessive water runoff or by the activities of another contractor.  Davis stated that he informed Way that repair of the sub-grade was not Stanley Miller's obligation. Steve Miller testified that when he raised the issue with Way in May 2004, Way threatened to assess liquidated damages against Stanley Miller unless and until the damage was repaired.  Miller subsequently brought in equipment to make the necessary repairs, "under protest."

{¶ 118} Even if the court were to determine either that Stanley Miller complied with the 10-day notice requirement of Article 8.1 or that Way's conduct resulted in a waiver by OSFC of strict compliance therewith, the evidence does not demonstrate compliance either with Article 8.2 or 8.3 of the contractual claims process. As noted above, a waiver of Article 8.2 and 8.3 has not been shown.  Moreover, as this court held in Stanley Miller I, the evidence does not support recovery upon the total cost theory. Thus, Stanley Miller has not proven an entitlement to an equitable adjustment to the contract for the extra costs allegedly incurred in regard to the temporary roads.

## VIII.  SEWER WORK

{¶ 119} The evidence establishes that the contractor responsible for the building foundation  was required to leave voids in the concrete so that Stanley Miller could later run down spouts for the sanitary sewer.  Stanley Miller contends that Way intentionally permitted the contractor to omit the openings; Way testified that he simply "missed it." In either event, the foundation contractor left extra materials (90 degree elbows) so that Stanley Miller could run the down-spouts outside the foundation.  Although Stanley

Miller was able to complete the work, Kramer testified that the process required additional labor as well as the purchase of additional down-spouts.

{¶ 120} According to Kramer, Way did not dispute Stanley Miller's entitlement to an equitable adjustment and he agreed to take care of payment at a later date. Hoffman testified that Way later reneged on his promise and told him not to bother to make such a claim because it would be denied. Way admitted that he agreed to arrange for payment but he insists that Stanley Miller never got back to him with a figure.

{¶ 121} In Stanley Miller I, this court found that any effort by Stanley Miller to employ the contractual claims process would have been futile. Given the scope of remand under Stanley Miller II, the court must determine whether OSFC waived strict compliance with Article 8. Based upon the credible testimony of Stanley Miller's witnesses, the court finds that Way's words and conduct amounted to a waiver of the notice requirements of Article 8.1.

{¶ 122} However, with regard to the Article 8.2 and 8.3, there is no convincing evidence of waiver. OSFC was entitled to a more detailed claim under Article 8.2 and more information in support of the claim when requested by OSFC pursuant to Article 8.3.1. Indeed, while the $17,473.04 figure set forth in the one-page, $1.1 million claim for "sewer work" represents the costs of 30 additional down-spouts, upon cross-examination, Steve Miller conceded that he was mistaken and that there were only seven extra down-spouts installed.

{¶ 123} Based upon the foregoing, Stanley Miller shall not recover for the portion of the claim related to sewer work.


## IX.  INTEREST

{¶ 124} As stated above, Stanley Miller has asserted a claim for interest earned but not paid on sums that, by agreement of the parties, became due and owing to

Stanley Miller in or about 2004.  OSFC did not remit the funds until after this lawsuit was filed in 2006.  OSFC has not asserted a legal defense to the interest claim nor has it challenged the amount of such claim.  Accordingly, Stanley Miller shall be awarded damages representing the interest earned in the total amount of $36,074.04.

## X.  OTHER CLAIMS

{¶ 125} With respect to Stanley Miller's claim for unjust enrichment, absent proof of bad faith or fraud, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract.  *See Kucan v. Gen. Am. Life Ins. Co.*, 10th Dist. No. 01AP-1099, 2002-Ohio-4290, ¶35, citing *Rumpke v. Acme Sheet & Roofing, Inc.,* 2nd Dist. No. 17654 (Nov. 12, 1999).  Although the evidence in this case demonstrates that there was an animosity between Stanley Miller and Ruhlin, the evidence is inconsistent with a finding of either bad faith or fraud on the part of Ruhlin and OSFC.

{¶ 126} Additionally, Stanley Miller may not pursue a claim for relief sounding in negligence where the loss is purely economic in nature.  *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45 (1989); *Inglis v. Am. Motors Corp.*, 3 Ohio St.2d 132 (1965), paragraph one of the syllabus.  Accordingly, these claims are without merit.

## XI.  THIRD-PARTY COMPLAINT

{¶ 127} In its third-party complaint against OSFC, Canton asserts that it is a joint owner of the Lehman Middle School and that in the event that the court finds in favor of plaintiff, Canton is entitled to indemnification from co-owner OSFC in proportion to OSFC's ownership of the project.  OSFC has denied the allegations of the third-party complaint.

{¶ 128} R.C. 3318.08 provides that: "the commission [OSFC] shall enter into an agreement with the school district board for the construction and sale of the project. In either case, the agreement shall include, but need not be limited to, the following provisions:

{¶ 129} "* * *

{¶ 130} "(F)                    Ownership of or interest in the project during the period of construction, which shall be divided between the commission and the school district board in proportion to their respective contributions to the school district's project construction fund;

{¶ 131} "* * *

{¶ 132} "(O)                    Provision for the deposit of an executed copy of the agreement in the office of the commission;

{¶ 133} "* * *

{¶ 134} "(T)                    A provision stipulating that, unless otherwise authorized by the commission, any contingency reserve portion of the construction budget prescribed by the commission shall be used only to pay costs resulting from unforeseen job conditions, to comply with rulings regarding building and other codes, to pay costs related to design clarifications or corrections to contract documents, and *to pay the costs of settlements or judgments related to the project* as provided under section 3318.086 of the Revised Code." (Emphasis added.)

{¶ 135} R.C. 3318.083 also states:

{¶ 136} "If, after the Ohio school facilities commission and a school district enter into a written agreement under section 3318.08 of the Revised Code for the construction of a classroom facilities project, the commission approves an increase in the basic project cost above the amount budgeted plus any interest earned and available in the project construction fund, the state and the school district shall share the

increased cost in proportion to their respective contributions to the district's project construction fund."

{¶ 137} Canton's agreement with OSFC was not introduced into evidence in this case, nor was a copy of said agreement provided to the court as an attachment to either the third-party complaint or the answer thereto.  However, inasmuch as an agreement that speaks to the payment of judgments related to the project is required by statute, judgment shall be rendered in favor of Canton as to the third-party complaint. Furthermore, the evidence establishes that ownership at the project during construction was shared jointly by Canton and OSFC, 23 percent to 77 percent respectively. Judgment shall be awarded accordingly.

**CONCLUSION**

{¶ 138} Even though the court has previously found, in Stanley Miller I, that OSFC breached the contract and that the breach proximately caused Stanley Miller damages in the form of unanticipated extra costs, Stanley Miller waived its right to an equitable adjustment to the contract in most cases due to its failure to comply with the contractual claims process. The only exception to the waiver in this case is Stanley Miller's claim for additional costs in the Site Work division in the amount of $8,658.35 and its claim for interest earned of $36,074.04.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STANLEY MILLER CONSTRUCTION CO.

    Plaintiff

    v.

STATE OF OHIO

    Defendant

    and

CANTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al.

    Defendants/Third-Party
    Plaintiffs

    v.

OHIO SCHOOL FACILITIES COMMISSION

    Defendant/Third-Party Defendant

Case No. 2006-05632-PR

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

{¶ 139} On March 1, 2010, this court issued a judgment rendered jointly against Canton and OSFC and in favor of plaintiff in the amount of $404,276.93 and in favor of Canton on the third-party complaint.  On December 28, 2010, the Tenth District Court of Appeals reversed the judgment of this court and remanded the case for further proceedings.

{¶ 140} Based upon the court's review of the evidence in record, the briefs of counsel, and  in accordance with the opinion of the court of appeals, judgment is hereby rendered as follows:   jointly against Canton and OSFC as to the complaint in the amount of $44,757.39, which includes the $25 filing fee; and in favor of Canton as to the third-party complaint.  The clerk is directed to return the original papers to the Stark County Court of Common Pleas.  Court costs are assessed against OSFC.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.


_____
JOSEPH T. CLARK
Judge

cc:


James E. Rook                                     John C. Ross
Jon C. Walden                                     6269 Frank Avenue, NW
Paula Luna Paoletti                               North Canton, Ohio 44720
Scott Branam
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Matthew Yackshaw
Robert J. McBride Sr.
Millennium Centre, Suite 300
200 Market Ave., N.
P.O. Box 24213
Canton, Ohio 44701-4213

006

Filed May 8, 2012
To S.C. Reporter August 31, 2012